**UNION INSURANCE COMPANY,**
**Plaintiff-Appellant,**

v.

**RCA CORPORATION,**
**Defendant-Appellee.**

**No. 82CA1480.**

Colorado Court of Appeals,
Div. II.

Jan. 30, 1986.

Rehearings Denied March 13, 1986.

Certiorari Denied Aug. 25, 1986.

Halaby & McCrea, Theodore S. Halaby, Leslie L. Schluter, Denver, for plaintiff-appellant.

Hall & Evans, Richard A. Waltz, Alan Epstein, Denver, for defendant-appellee.

STERNBERG, Judge.

Plaintiff, Union Insurance Company, appeals from a judgment entered on a jury verdict denying it recovery in this product liability action brought against defendant, Radio Corporation of America (RCA). Plaintiff's principal contention on appeal is that the trial court committed reversible error in instructing the jury pursuant to § 13–21–403(1), C.R.S. (1985 Cum.Supp.). We reverse.

In July 1974, Keith P. Holtz, plaintiff's insured, purchased an RCA television set. In September 1976, a fire occurred in the Holtz home. In July 1977, Holtz executed a proof of loss reflecting that he had received payment on his claim against plaintiff. Plaintiff then brought suit as subrogee of its insured, alleging that the fire

was caused when the TV ignited because of defects in its design and/or manufacture.

At trial, over objection by plaintiff, the jury was instructed that:

"In this case, if you find that (1) prior to any sale by RCA, the television set conformed to the state of the art, as distinguished from industry standards, and (2) such state of the art was applicable to such products as the television set at the time of such sale, then the law presumes that the television set was not defective. In this case, if you find that (1) at the time RCA made any sale of the television set, (2) it did not fail to comply with any applicable code, standard, or regulation adopted or promulgated by the United States, or by any agency of the United States, then the law presumes that the television set was not defective.

You must consider these presumptions together with all the other evidence in the case in determining whether or not the television set was defective."

This instruction combines and substantially reproduces approved instructions set forth in *CJI-Civ.2d* 14:24 and 14:25 (1984 Supp.). These instructions contain statutory rebuttable presumptions which were intended to apply to causes of action accruing on or after July 1, 1977. Colo.Sess. Laws 1977, ch. 199 at 820–21. *See* § 13–21–403(1), C.R.S. (1985 Cum.Supp.).

### I.

Plaintiff contends, *inter alia*, that the giving of this instruction was error because the cause of action to which it was subrogated accrued at the time of the fire, not when the proof of loss was executed. We agree.

■■■ A subrogee steps into the shoes of its subrogor and cannot therefore possess rights greater than those of its subrogor. *See Employers Casualty Co. v. Wainwright,* 28 Colo.App. 292, 473 P.2d 181 (1970). The claim of a subrogee insurance carrier is derivative of the claim of its subrogor insured. Subrogation merely alters the beneficial ownership of the claim, not its identity, and gives the insuror the right to prosecute against responsible third parties whatever rights its insured possesses against them. *See* 16 G. Couch, *Cyclopedia of Insurance Law* §§ 61:36 and 61:37 (R. Anderson 2d ed.1983).

■■■ Thus, it is generally held that statutes of limitation begin to run against a subrogee insurer at the time a claim accrues to its insured. *See, e.g., Indiana Lumberman's Mutual Insurance Co. v. Curtis Mathes, Inc.,* 456 So.2d 750 (Miss. 1984) (In action resulting from TV that caught fire, the fact that plaintiff did not become subrogated to its insureds cause of action until 11 months later did not extend the applicable statute of limitations). *See also* Annot., 91 A.L.R.3rd 844 (1979). We see no reason in logic or policy why the result should be different in the present context. Because Holtz' cause of action against RCA accrued before the effective date of § 13–21–403, we conclude that the trial court erred in instructing the jury pursuant to that statute.

### II.

Defendant contends, however, that so instructing the jury was harmless error because plaintiff offered only circumstantial evidence that the TV caused the fire and, absent direct evidence of cause and defect, defendant was entitled to a directed verdict. We disagree.

■■■ To avoid a directed verdict in a strict liability case, a plaintiff must offer proof of each element set forth in *Restatement (Second) of Torts* § 402A sufficient to create an issue of fact as to the existence thereof. *See Belle Bonfils Memorial Blood Bank v. Hansen,* 665 P.2d 118 (Colo. 1983). Proof of the defective condition of the product is central to the prima facie case. *See Restatement (Second) of Torts* § 402A.

■■■ Contrary to defendant's contention, we are not here faced with an application of the doctrine of *res ipsa loquitur:* Plaintiff does not argue that the mere occurrence of the fire supports the inference

that the TV was defective. Indeed, plaintiff introduced evidence that, from the time Holtz unpacked the television from its factory carton, it was used normally and neither disturbed internally nor abused. Extensive and detailed testimony by experts in fire investigation showed that the fire started in the specific location of the TV and identified the area in the TV at which ignition occurred. This testimony also excluded other possible causes of the fire. All of this evidence was substantially uncontroverted.

 Defendant further contends that evidence showing that the TV ignited should not be sufficient to establish the inference that it was defective. However, direct proof of defect was impossible in this case because the TV was destroyed in the fire. A ruling that proof of defect is unattainable as a matter of law in circumstances such as these would effectively establish a conclusory presumption of non-liability in favor of strict product liability defendants whose products self-destruct in the process of causing injury to persons or property. We are not prepared to adopt such a view. Therefore, we hold that plaintiff's evidence was sufficient as a matter of law to create an issue of fact as to the element of defect. *See Liberty Mutual Insurance Co. v. Sears, Roebuck & Co.,* 35 Conn.Sup. 687, 406 A.2d 1254 (1979); *Fain v. GTE–Sylvania, Inc.,* 652 S.W.2d 163 (Mo.App.1983); *Tigert v. Admiral Corp.,* 612 P.2d 1381 (Okla.App.1980) (All supporting rule, applied in nearly identical fact situations, that similar evidence is sufficient to create an inference of defect establishing liability). *See also* 2 L. Frumer & M. Freidman, *Products Liability* § 16A(4)(e)(ii) (1985); Annot., 51 A.L.R.3rd 8 (1973).

### III.

Defendant next contends that the giving of this instruction was harmless error because the presumptions stated therein were merely redundant expressions of the state of the law prior to July 1, 1977, and did not prejudicially affect plaintiff's burden of persuasion. Again, we disagree.

 To establish liability, a plaintiff must prove each element of its claim by a preponderance of the evidence. *See Exchange National Bank v. Sparkman,* 191 Colo. 534, 554 P.2d 1090 (1976). Once the plaintiff has established its prima facie case the burden of going forward shifts to defendant. *See Judkins v. Carpenter,* 189 Colo. 95, 537 P.2d 737 (1975). Rebuttable presumptions of fact do not shift the burden of persuasion, *see American Insurance Co. v. Naylor,* 101 Colo. 34, 70 P.2d 349 (1937), but they may aid either party in meeting its burden. *See* CRE 301. Absent precedent, determinations as to what amount of evidence is necessary to overcome a rebuttable presumption are to be handled on an *ad hoc* basis. *See Cline v. Boulder,* 35 Colo.App. 349, 532 P.2d 770 (1975).

We note that there is considerable dispute among courts and scholars regarding both the practical and the legal effects of instructing a jury as to its use of a presumption. Such instructions may mystify rather than clarify; this possibility may be exacerbated when, as here, a presumption is considered to be evidence in itself rather than a tool for reasoning. *See generally McCormick on Evidence* §§ 342–44 (3d ed. 1984); Allen, *Presumptions in Civil Actions Reconsidered,* 66 Ia. Law Rev. 843 at 855–59 (1981).

 Prior to enactment of § 13–21–403, evidence of state of the art and regulatory compliance was only one of several factors to be considered in determining whether a product was defective. *See Blueflame Gas, Inc. v. Van Hoose,* 679 P.2d 579 (Colo. 1984); *Belle Bonfils Memorial Blood Bank v. Hansen, supra.* As indicated by the instruction at issue here, the presumptions established by § 13–21–403 are considered to be evidence of non-defectiveness of a product. *See Belle Bonfils Memorial Blood Bank v. Hansen, supra; Hawkinson v. A.H. Robins Co., Inc.,* 595 F.Supp. 1290 (D.Colo.1984). Thus, while the instruction did not alter plaintiff's burden of persuasion regarding the defective condi-

tion of the TV, it did affect that burden by supplementing defendant's burden of going forward. Because the instruction presented the presumption, the jury had before it affirmative evidence to which defendant was not entitled.

Especially here, where the record reveals that defendant's evidence of state of the art and regulatory compliance was unclear and confusing, we cannot say that the jury, in assessing whether plaintiff had met its burden of persuasion by a preponderance, was not influenced by the weighty proclamation that the law presumed the TV was non-defective. Consequently, we hold that the giving of this instruction was prejudicial error.

We do not reach the question whether defendant produced enough evidence of state of the art and regulatory compliance to entitle it to the instruction. Plaintiff's argument that it was entitled to judgment notwithstanding the verdict is without merit.

Accordingly, the judgment is reversed and the cause is remanded for new trial.

SMITH and BERMAN, JJ., concur.