The TRAVELERS INDEMNITY
COMPANY OF ILLINOIS,
Plaintiff–Appellee,

v.

MID–CENTURY INSURANCE
COMPANY, Defendant–
Appellant.

No. 96CA1225.

Colorado Court of Appeals,
Div. III.

Oct. 30, 1997.

Rehearing Denied Dec. 11, 1997.

Certiorari Granted July 27, 1998.

Clifton, Hook & Bovarnick, P.C., James R. Clifton, Harvey D. Flewelling, Denver, for Plaintiff–Appellee.

Levy & Lambdin, P.C., Suzanne Lambdin, Stephanie A. Montague, Englewood, for Defendant–Appellant.

Opinion by Judge HUME.

Defendant, Mid–Century Insurance Company, appeals the award of damages to plaintiff, Travelers Indemnity Company of Illinois. We affirm.

Plaintiff's insured was injured in an automobile accident while riding as a passenger in a car covered by an insurance policy issued by defendant. Defendant denied her claim for personal injury protection (PIP) benefits, asserting that her one-time request of her roommate for a ride to work when her truck was being repaired constituted a ride-

sharing arrangement under 10–4–707.5, C.R.S. 1997.

The insured then contacted plaintiff, her insurer. Plaintiff's claims representative called defendant to dispute its refusal to pay the insured's PIP benefits. Defendant told the representative that it was standing by its decision to deny such benefits on the ground that the one-time ride was a ridesharing agreement. Defendant subsequently closed its file on the incident and took no other action on the insured's claim.

Plaintiff, as the insured's insurance carrier, paid PIP benefits to her and sought reimbursement from defendant for the amounts paid. Defendant continued to deny its liability for such payments relying on its interpretation of the ridesharing statute.

Plaintiff then filed suit seeking reimbursement and a declaratory judgment that defendant was the primary provider for PIP benefits arising from the accident. The trial court granted plaintiff's motion for summary judgment, determining that defendant was liable as the primary provider and was required to reimburse plaintiff for the amounts paid to its insured. Defendant does not challenge this judgment on appeal.

Plaintiff then amended its complaint to add a claim for treble damages, prejudgment interest, and attorney fees incurred as a result of defendant's alleged willful and wanton failure to pay PIP benefits. Plaintiff also filed another motion for summary judgment, which the court granted, determining that defendant had waived its right to dispute the reasonableness and necessity of the amounts paid by plaintiff. This judgment also is not challenged on appeal.

Following a trial, a jury determined that defendant's refusal to pay PIP benefits was willful and wanton. The trial court entered judgment for plaintiff and awarded treble damages pursuant to 10–4–708(1.8), C.R.S. 1997.

Defendant's sole contention on appeal is that the trial court erred in awarding treble damages to plaintiff. The primary argument advanced by defendant in seeking reversal is based upon a narrow reading of the language of 10–4–708(1.8) which states that: "[T]he insurer shall pay to the insured ... an amount which is three times the amount of unpaid benefits recovered ..." (emphasis added). We perceive no error.

In enacting legislation establishing requirements for property and casualty insurance, the General Assembly declared that the "health, welfare, and safety of the people ... would be enhanced by the expeditious handling of liability claims." Section 10–4–101, C.R.S. 1997. Similarly, the Colorado Auto Accident Reparations Act, 10–4–701, et seq., C.R.S. 1997 (the No-fault Act), was enacted to avoid inadequate compensation to automobile accident victims and provide benefits to persons injured in such accidents. Section 10–4–702, C.R.S. 1997; *Farmers Group, Inc. v. Williams*, 805 P.2d 419 (Colo.1991).

Section 10–4–708(1), C.R.S. 1997, grants persons entitled to collect PIP benefits the statutory right to maintain an action in contract against an insurer who fails to pay such benefits, and 10–4–108(1.8) provides a civil penalty for an insurer's willful and wanton failure to pay such benefits.

■ The Colorado Supreme Court has determined that treble damages under 10–4–708(1.8) are not punitive in nature. Rather, this section establishes a statutory claim to a civil penalty upon proof by a preponderance of evidence of an insurer's willful and wanton failure to pay benefits. Once such conduct on the part of the insurer has been proven, the award of treble damages is automatic. *Farmers Group, Inc. v. Williams, supra.*

■ A civil penalty is a statutory penalty imposed against an offender for doing some act which is prohibited or for failing to do an act which is required to be done. Black's Law Dictionary 168 & 983 (abridged 6th ed. 1991).

A penalty that is not solely punitive in nature may be imposed to further some remedial purpose. See *Deutschendorf v. People*, 920 P.2d 53 (Colo.1996); see also *In re Marriage of Zebedee*, 778 P.2d 694 (Colo.App.1988)(civil contempt proceedings have remedial purpose of compelling performance).

We conclude that the remedial purpose of an award of treble damages under 10–4–

708(1.8) is to advance the legislative intent that liability claims be expeditiously handled through private enforcement of the statute, and that the narrow construction advanced by defendant is contrary to the express legislative purpose of the No-fault Act.

Subrogation is the right of an insurer to be put in the position of its insured in order to pursue recovery from third parties legally responsible to the insured for a loss the insurer has paid. *Porter v. Castle Rock Ford Lincoln Mercury, Inc.,* 895 P.2d 1146 (Colo.App.1995).

A subrogee steps into the shoes of its subrogor and, thus, possesses rights neither greater nor less than those of its subrogor as to the benefits actually paid. Subrogation alters the beneficial ownership of a claim, rather than its identity. Through subrogation, the insurer receives the right to prosecute against responsible third parties whatever rights its insured possesses against such parties. *Union Insurance Co. v. RCA Corp.,* 724 P.2d 80 (Colo.App.1986).

Here, the insured was entitled pursuant to 10–4–708(1) to collect PIP benefits from defendant. Plaintiff, because it had paid those benefits, was also entitled to seek payment for them as the insured's subrogee. Plaintiff's expert witness testified that defendant did not meet the standard of conduct for the insurance industry in its handling of the insured's claim, that no authority existed in support of defendant's decision to deny benefits, and that its basis for denying such benefits was unjustified under the circumstances. The jury agreed and determined that defendant acted in a willful and wanton manner in denying payment.

If the insured had brought an action against defendant for its willful and wanton failure to pay her such benefits, she would have been entitled by statute to an automatic award of treble damages upon proof by a preponderance of the evidence of defendant's willful and wanton conduct. See *Farmers Group, Inc. v. Williams, supra.* Plaintiff, as the insured's subrogee who in fact pursued recovery against defendant of benefits that it had paid to the insured, is entitled by statute to avail itself of the right to pursue treble damages for defendant's willful and wanton conduct in denying PIP benefits.

Accordingly, once plaintiff, as the party authorized to maintain this action against defendant, established that defendant's refusal to pay PIP benefits was willful and wanton, the plain language of 10–4–708(1.8) mandated a treble damage award.

The judgment is affirmed.

JONES and BRIGGS, JJ., concur.